UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MELISSA M. THOMPSON,

                         Plaintiff,          12-CV-0890(MAT)

            v.                               **DECISION**
                                             **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                         Defendant.
_____

## INTRODUCTION

     Melissa M. Thompson ("Plaintiff"), who is represented by counsel, brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11, 12.

## BACKGROUND

     On July 22, 2008, Plaintiff filed applications for SSI and DIB alleging disability beginning June 24, 2008, on the basis of back, neck, and hip injuries. T. 148-55, 163. Those applications were

_____

     [1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

initially denied, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). T. 46-48, 77-78.

Plaintiff appeared with a non-attorney representative before ALJ Jennifer Whang during a video hearing on October 13, 2010. T. 11-45. The ALJ also heard testimony from a vocational expert. T. 37-43. An unfavorable decision was issued on November 20, 2010. T. 49-50.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity during the period at issue; (2) she had the severe impairments of disc bulges of the cervical spine, obesity, and depressive disorder; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appx. 1, and that she retained the residual functional capacity ("RFC") to perform sedentary work, with the additional limitations of a sit/stand option every 30 minutes; never climbing ladders, ropes, or scaffolds; occasionally using ramps and stairs, balancing, stooping, kneeling, crouching, and rotating her neck; avoiding hazards and exposure to fumes, odors, dusts, and gases; and performing only simple, routine, repetitive tasks in a low-stress job with occasional

2

direct interaction with others; (4) Plaintiff could not perform her past relevant work; and (5) there was other work that existed in significant numbers in the national economy that Plaintiff could perform. The ALJ then concluded that Plaintiff was not disabled under the Act. T. 52-63.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied her request for review on July 27, 2012. T. 1-3. This action followed. Dkt. #1.

The Commissioner moves for judgment on the pleadings arguing that the ALJ's decision must be affirmed because it was supported by substantial evidence and was based on the application of correct legal standards. Comm'r Mem. (Dkt.#11-1) 2-24.

Plaintiff has filed a cross-motion on the grounds that: (1) the ALJ did not use the appropriate legal standards in determining Plaintiff's RFC; (2) the credibility assessment was not supported by substantial evidence; and (3) the vocational expert testimony cannot provide substantial evidence to support the denial of benefits. Pl. Mem. (Dkt.#12-1) 1-24.

## DISCUSSION

## I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see

4

also <u>Mongeur</u>, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case <u>de novo</u>).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## II. <u>Medical Evidence</u>

### A.   Treating Sources and Medical Imaging Tests

Plaintiff was involved in a motor vehicle accident on June 24, 2008. X-rays of the spine taken that day revealed no evidence of fracture or dislocation, no significant disc space narrowing, and no evidence of neural foramen encroachment, or cervical ribs. T. 282. The reading physician indicated that there was "slight reversal of the normal cervical curve," possibly due to muscle spasm. <u>Id.</u>

The following day, Plaintiff was diagnosed with a probable musculoskeletal sprain at UB Family Medicine and was prescribed Flexeril, ice, rest, and no work for two weeks. T. 330-31.

On July 7, 2008, Dr. Conrad Williams of Zenith Medical excused Plaintiff from work through July 29, 2008, for acute injuries sustained in the motor vehicle accident. T. 391.

A magnetic resonance imaging ("MRI") test of Plaintiff's left hip on July 31, 2008, was unremarkable, as was a paraspinal electromyography ("EMG") taken on August 7, 2008. T. 336, 501. A nerve conduction study dated August 14, 2008, revealed evidence of left L5 radiculopathy. T. 503-04.

An MRI of the lumbar spine on August 11, 2008 indicated straightening of the lumbar lordosis, but no evidence of disc herniation or significant spondylosis. T. 332. A cervical spine MRI taken the same day revealed prominent reversal of cervical lordosis with limited range of motion in flexion and mild posterior disc bulges at the C4-6 disc levels with mild impingement of the ventral spinal cord. T. 334.

Dr. Williams assessed Plaintiff with acute cervical and lumbar strains on August 26, 2008, and excused Plaintiff from work through March 18, 2009. T. 393-94, 395, 397, 399, 402, 404.

From January to July, 2009, Plaintiff received pain management treatment with Jerry Tracy, M.D. She reported some relief with a transcutaneous electrical nerve stimulation ("TENS") unit and tolerated light activity on January 22, 2009. T. 429-30. Dr. Tracy assessed Plaintiff with cervicaglia (neck pain), low back pain, and joint pain in the pelvic region and thigh. T. 432. He recommended

6

psychiatric treatment for Plaintiff's depression and prescribed Lortab, Nerontin, Pristiq, Mobic, a TENS unit, and epidural steroid injections. Id. In February he prescribed Celebrex and discontinued Mobic and previously-prescribed Tramadol. T. 436-37. Treatment notes dated March 6, 2009, indicated that Plaintiff was temporarily markedly disabled. T. 440. In May, 2009, it was noted that Plaintiff had a 50% reduction in pain following a second epidural steroid injection. T. 442. In July, her pain was reported at 4-5/10 under a pain management regimen. T. 447.

Plaintiff was seen at University Orthopaedic Services on February 4, 2009, for a consultation for neck, back, arm, leg, and head pain. T. 489-91. She complained of complete body pain and rated her pain at 9/10. T. 489-90. On physical exam, she demonstrated reciprocal gait, good strength and coordination, and good range of motion in her cervical spine. Rotation to the left and right were 90 degrees. She had pain-free range of motion in the hips, knees, and ankles, and the shoulders in the seated position. Internal rotation of the left ankle caused leg pain. The doctor noted 3+ reflexes, a "trace of Hoffman's bilaterally as well as equivocal clonus," and an inverted radial reflex bilaterally. T. 490. Radiographs showed kyphosis at C4-5 and radiographs of the thoracic and lumbar spine were normal. T. 491.

Imaging tests taken the same day revealed a reversal of the cervical curve due to positioning or muscle spasm, no evidence of

7

bony injury to the cervical spine, and a normal thoracic and lumbar spine. T. 492-93.

Plaintiff saw Dr. Mark Fineberg at University Sports Medicine for shoulder pain in March and April of 2009. T. 414-27. A left shoulder MRI indicated tendinosis. Surgery was not recommended and Plaintiff was to continue physical therapy and pain management. T. 417-19.

On November 12, 2009, Plaintiff's primary physician completed a Medical Source Statement indicating that Plaintiff could occasionally lift and carry up to 10 pounds, sit for 2 hours at a time, and stand/walk for 2 hours at a time. T. 456-57. In an 8-hour workday, Plaintiff could sit for 4 hours, and stand/walk for 2 hours. T. 457. She did not require a cane to ambulate, and could frequently use her hands reaching, handling, fingering, feeling, and pushing/pulling, with the exception of occasionally reaching overhead and pushing/pulling with the left hand. T. 458. Dr. Williams further opined that Plaintiff should never climb ladders or scaffolds, balance, or crawl, and could occasionally climb stairs and ramps, stoop, kneel, and crouch. T. 459. She was to avoid unprotected heights and extreme cold. T. 460. He based his findings on EMG and nerve conduction studies. T. 459.

### B.   Psychiatric Treatment

From March 3, 2008, through October 6, 2010, Plaintiff underwent psychological treatment at the Monsignor Carr Institute.

T. 600-82. At various times during her treatment, Plaintiff was diagnosed with dysthemic disorder, anxiety disorder, adjustment disorder, major depressive disorder, psychotic disorder, and post traumatic stress disorder. T. 623, 627, 633, 641, 645, 649, 669. Progress notes indicate that Plaintiff's Global Assessment of Functioning Score increased over time, from 55 to 63, reflecting mild symptoms at the higher end of the spectrum. Amer. Psych. Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. rev. 2000); T. 623, 633, 656. In 2009 and 2010, her mental status was consistently noted as being stable. T. 629-632, 636, 639-40, 644, 646, 654-55, 658, 665, 673.  Plaintiff was prescribed amitriptyline, Cymbalta, ibuprofen, Lyrica, Abilify, zolpidem, and bupropion. T. 652, 660-61, 667-68.

### C.   Consultative Examinations

Plaintiff underwent a consultative examination with Dr. Kathleen Kelley, M.D., on September 11, 2008. Plaintiff reported neck pain with associated headaches and back pain, and that she received physical therapy, acupuncture, and chiropractic therapy since a motor vehicle accident in June of 2008. T. 340-41. She was able to occasionally cook, clean, do laundry, and shop. T. 341.

On physical examination, Plaintiff alleged balance problems while performing a half-squat, but could heel-toe walk, change for the exam, and rise from the chair without difficulty. T. 342. She

was in no acute distress with normal gait and limited range of motion in the cervical and lumbar. The remainder of her physical examination was normal, as were the neurologic examination findings. T. 342-43. Dr. Kelley opined that bending or twisting the cervical or lumbosacral spine would aggravate Plaintiff's symptoms, and that she should avoid working around heights, sharps, or heavy equipment, and should not lift, carry, push/pull, or reach for markedly heavy objects. T. 344.

Renee Baskin, Ph.D., performed a consultative psychiatric evaluation of Plaintiff on the same day. T. 345-48. Dr. Baskin noted that Plaintiff was responsive and cooperative, and her social skills and overall presentation were adequate. T. 346. Her affect was somewhat anxious and markedly tearful, but her thought processes were coherent and goal-directed without evidence of hallucinations, delusions, or paranoia. T. 346. Plaintiff demonstrated mild impairment in concentration and memory due to emotional distress. Plaintiff could count, perform simple calculations and serial threes, was fully oriented with clear sensorium and dysthymic (depressed) mood. T. 346. Her intellectual functioning was low to below average and her insight and judgment were fair. T. 347. Dr. Baskin opined that Plaintiff was moderately limited in dealing with stress, and had minimal to no limitation in understanding and carrying out simple instructions independently, maintaining attention and concentration, maintaining a regular

schedule, learning new tasks with supervision, making appropriate decisions, and relating adequately with others. T. 347.

State Agency review psychiatrist H. Tzetzo reviewed the record on October 22, 2008, and assessed an adjustment disorder with mixed anxiety and depressed mood. T. 358-74. Plaintiff had no restriction in activities of daily living, moderate limitations in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. T. 368. Dr. Tzetzo concluded that Plaintiff could understand and follow instructions, relate to a supervisor, and employ judgment to make work-related decisions in a setting with little public contact. T. 370.

## III. **Non-medical Evidence**

Plaintiff, who was aged 34 to 36 during the period at issue, alleged disability stemming from a motor vehicle accident in 2008, resulting in headaches, left flank pain, right hip pain, and substantial neck cramping with shooting pain throughout her body. T. 29-30. She testified at her disability hearing that she received injections, did physical therapy, and went to a chiropractor, but surgery was not recommended by her doctors. T. 30.

Plaintiff lived in a first-floor apartment with her three children, ages 11, 16, and 17. She had a driver's license but took public transportation because she experienced pain while driving. T. 19. A typical day involved going to doctor's appointments and

11

taking naps. T. 25. Her children assisted her with household chores, food preparation, and lifting heavy items at the grocery store, however she was able to shop for herself. Id.

Plaintiff stated that she could sit for 20-30 minutes at a time before changing positions, and could lift only extremely light bags. T. 26. She attended church, performed self-care, did not drink, and smoked approximately 5 to 6 cigarettes per day. T. 26-27.

With regard to her depression, Plaintiff testified that she was hospitalized in 2005, and that her doctor wanted to put her in the hospital again, but she didn't know why. T. 31. She stated that she could not focus, her mind wandered, and that her medicines made her drowsy. Id. Plaintiff cried during the hearing. T. 31-33.

A vocational expert testified that Plaintiff previously worked as a mail handler, bus driver, and home health aide. T. 36. An individual of Plaintiff's age, educational background, work experience, and residual functional capacity, including a sit/stand option, could not perform her past work, but could work as a final assembler, polisher, or stuffer. T. 38-42.

## IV. **The decision of the Commissioner that Plaintiff was not disabled was supported by substantial evidence.**

### A. Residual Functional Capacity

Plaintiff next contends that the ALJ erred in formulating her residual functional capacity due to her misapplication of the "treating physician rule," her failure to properly develop the

12

record with regard to Plaintiff's mental impairments, and failing to include a function-by-function analysis of Plaintiff's limitations. Pl. Mem. 15-21. The Court deals with each of these points separately.

An individual's residual functional capacity is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). When making an residual functional capacity assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F.Supp.2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 380 Fed. Appx. 231 (2d Cir. 2010).

Here, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work with a sit/stand option. T. 57. In reaching this conclusion, the ALJ fully considered the entire record and addressed  the objective medical

tests, Plaintiff's subjective complaints, treatment notes from her providers, and the opinion evidence.

With regard to the opinion evidence, the ALJ afforded "appropriate weight" to the consultative opinion of Dr. Kelley, "little weight" to the opinions of Drs. Williams and Tracy that Plaintiff was totally disabled, "appropriate weight" to Dr. Williams' Medical Source Statement, and "appropriate weight," to the independent medical examination by Dr. Chung. T. 60. Specifically, Plaintiff challenges the ALJ's application of the treating physician rule with respect to Dr. Williams. Pl. Mem. 16-17.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). However, "the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999), citing 20 C.F.R. § 404.1527(d)(4).

The Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Snell, 177 F.3d at 133 ("A treating

14

physician's statement that the claimant is disabled cannot itself be determinative.").

As discussed by the ALJ, the portion of Dr. Williams' Medical Source Statement indicating that Plaintiff could perform less than the full range of sedentary work as not supported by the objective evidence, including an August 2008 lumbar spine MRI that revealed no evidence of herniation, a contemporaneous MRI of the cervical spine which revealed only mild posterior disc bulges with mild impingement of the ventral spinal cord, an EMG of the cervical spine indicating no evidence of cervical radiculopathy, and February 2009 radiographs of the cervical spine, thoracic spine, and lumbar spine, which were all grossly normal. T. 332, 334, 492-94, 501. Moreover, the assessments from the consultative examiners as well as from Plaintiff's treating physicians at University Orthopaedic Services, were consistent with one another and with the less restrictive portions of Dr. Williams opinion.

The remainder of Dr. Williams' Medical Source Statement was consistent with the residual functional capacity determination assessed by the ALJ that Plaintiff could perform sedentary work (lifting no more than 10 pounds occasionally and standing and/or walking no more than 2 hours in an 8-hour work day) with additional limitations, a sit/stand option, and avoidance of certain environmental factors. T. 57, 456-61; see 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 96-9p ("An RFC for less

15

than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare . . . . However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.").

Finally, Dr. Williams' conclusion that Plaintiff was disabled was not entitled to special significance under the treating physician rule. See 20 C.F.R. § 416.927(d)(1)-(3); T. 391-405. The ALJ therefore properly afforded "appropriate weight" to Plaintiff's treating source, Dr. Williams.

Plaintiff next argues that the ALJ failed to sufficiently develop the record regarding Plaintiff's mental impairments. Pl. Mem. 18-19. While it is true that an ALJ is required to seek out further information where the evidence is inconsistent or contradictory, or where evidentiary gaps exist, see Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999), no such gaps are apparent on this record. Plaintiff's vague reference at her disability hearing that her doctor "wanted to put [her] in the hospital," was unsubstantiated in the medical record, and treatment notes from

March, 2008 through October, 2010 were largely unchanged over the course of two and a half years of psychiatric treatment, indicating that Plaintiff was in stable condition and taking medication. T. 58, 600-82.

It is well-settled that ALJ is only required to re-contact a medical source when the evidence the Commissioner received from the source is inadequate for her to determine whether Plaintiff is disabled. See 20 C.F.R. §§ 404.1512(e), 404.1520b(c). Here, the ALJ had the benefit of the treatment notes of Plaintiff's primary care providers and mental health treatment providers. See, e.g., Pellam v. Astrue, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (finding that the ALJ who had all of the treatment notes had no further obligation to supplement the record by obtaining a medical source statement from a treating physician).

Plaintiff's final challenge to the ALJ's residual functional capacity finding, which alleges that she failed to conduct a function-by-function analysis of Plaintiff's limitations, is unsupported by the record. Pl. Mem. 20-21.

The ALJ found that Plaintiff could perform sedentary work with the following additional limitations: (1) sit/stand option every 30 minutes; (2) never climbing ladders, ropes, or scaffolds; (3) occasionally using ramps and stairs, (4) occasionally balancing, stooping, kneeling, crouching, crawling, and rotating the neck; (5) avoid exposure to hazards, including moving machinery

17

and unprotected heights; (6) avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; (7) limited to simple, routine, repetitive tasks; (8) requiring a "low stress" job, defined has having only occasional decision-making and occasional direct interaction with the public; and (9) occasional direct interaction with co-workers or supervisors. T. 57.

Accordingly, the ALJ did provide a function-by-function analysis such that the residual functional capacity could be expressed in terms of exertional levels of work, which, in this case, was sedentary.

For all of the reasons articulated above, the Court finds that the ALJ's applied the appropriate legal standard in reaching his conclusion that Plaintiff was capable of sedentary work with certain additional limitations and her residual functional capacity assessment was supported by substantial evidence in the record.

### B.   Credibility Assessment

Plaintiff alleges that the ALJ did not apply the appropriate standards set forth in SSR 96-7p and 20 C.F.R. § 404.1529 in assessing Plaintiff's credibility. Pl. Mem. 22-24.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); <u>accord</u>

18

Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

    "If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia,

Valente v. Sec'y, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

In finding Plaintiff's subjective complaints not fully credible, the ALJ nonetheless gave Plaintiff "a great deal of deference" in determining her residual functional capacity. T. 57-61. Contrary to her contention that the ALJ did not provide a rationale for discounting Plaintiff's credibility, the written opinion shows that the ALJ summarized the evidence relating to each of Plaintiff's purported impairments, and stated that the objective medical findings did not support the severity of her limitations as alleged. With regard to Plaintiff's back and neck pain, the ALJ discussed the diagnostic imaging results and reasoned that the objective evidence in the record did not substantiate her subjective complaints of pain. T. 59. Likewise, the record showed that while Plaintiff did suffer from depression, her psychological examination results were unremarkable and she was able to attend to her daily activities of living, which included caring for herself and 3 children, attending church and doctor's appointments, and managing her own finances. The ALJ therefore found that her symptoms were not so severe as to consider them disabling. Id.

It is true that the ALJ did not specifically discuss the side effects of Plaintiff's medications as part of her credibility determination. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii). This alone does not constitute reversible error. See Miller v. Colvin, ---

F.Supp.3d ----, 2015 WL 628359, at *13 (W.D.N.Y. Feb. 12, 2015). The ALJ, however, did address Plaintiff's prescribed medications for both her pain and depression, as well as other conservative forms of treatment for her physical symptoms. T. 58. Viewed in conjunction with her thorough discussion of the medical and testimonial evidence, the ALJ provided ample reasoning supporting her credibility finding. See, e.g., Dupre v. Colvin, No. 13-CV-1367, 2015 WL 1383826 (N.D.N.Y. Mar. 25, 2015) (finding no error in ALJ's credibility determination where he did not discuss the plaintiff's medications or side effects; remanding on other grounds).

The Court finds that the ALJ's credibility determination was proper as a matter of law and supported by substantial evidence in the record.

### C.   Vocational Expert Testimony

Plaintiff argues that due to the ALJ's improper residual functional capacity finding, the hypothetical presented to the vocational expert was incomplete therefore could not provide substantial evidence to support the Commissioner's denial of benefits. Pl. Mem. 24-25.

As previously discussed, the ALJ was not in error for failing to follow the treating physician rule and therefore the hypothetical presented to the vocational expert was complete. Having found that the ALJ's residual functional capacity assessment

was supported by substantial evidence, the Court finds no error in the ALJ's step five conclusion. <u>See</u> <u>Wavercak v. Astrue</u>, 420 Fed.Appx. 91, 95 (2d Cir. 2011) ("[b]ecause we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#11) is granted, and Plaintiff's cross-motion (Dkt.#12) is denied. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
                MICHAEL A. TELESCA
             United States District Judge

Dated:    Rochester, New York
          June 9, 2015

22